**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
RICHARD LEVITT Esq.,

                         Plaintiff,

         - against -

DAVID H. BROOKS,

                         Defendant.
-----------------------------------------------------------X

**ORDER**

CV 11-1088 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

Presently before the Court is a motion to compel Defendant David H. Brooks ("Defendant" or "Brooks") to answer certain questions in an information subpoena served by Plaintiff Richard Levitt ("Plaintiff" or "Levitt") to obtain post-judgment discovery [DE 51]. Based upon my review of the parties' submissions and the applicable case law, Plaintiff's motion is GRANTED in part and DENIED in part.

    **A.**    **Background**

On March 14, 2011, Judge Seybert issued a Memorandum and Order granting Plaintiff's motion to compel Brooks to pay him $224,956.16 in attorney's fees owed for representing him in a criminal case filed in this district under Docket No. 2:06-CR-0050 ("Crim. Dkt."). *See* DE 12. Judgment was entered against Brooks in the amount of $224,956.16 on March 15, 2011 (the "Judgment"). DE 13. Brooks appealed the judgment and on February 14, 2012, the Second Circuit affirmed Judge Seybert's March 14, 2011 Order.

On April 29, 2011, after the Judgment was entered in the Eastern District of New York, Plaintiff docketed the Judgment in the New York County Supreme Court. *See* DE 21, Ex. 1. Seeking to collect on the Judgment, Plaintiff served subpoenas on various individuals requesting

information concerning Brooks' assets. These subpoenas led to the filing of four different motions. *See* DE 21, DE 22, DE 30, and DE 34. The Court ruled from the bench on the majority of the issues raised in these motions at a hearing on March 20, 2012. *See* DE 47.[1] However, one issue remains, namely, the propriety of Brooks' objections to certain questions on the grounds that answering the questions would violate his Fifth Amendment right to be free from self-incrimination with respect to the forfeiture proceedings in the pending criminal case against Brooks. A guilty verdict was entered against Brooks in that case on September 14, 2012, *see* Crim. Dkt. DE 1333. Brooks, however, has yet to be sentenced.

The Court has already issued certain preliminary rulings with respect to Brooks' objections to the information subpoenas. First, the Court held that the privilege against self-incrimination may be invoked by a convicted but as yet un-sentenced criminal defendant such as Brooks. Tr. at 32-35 (citing *e.g. United States v. Domenech*, 476 F.2d 1229, 1231 (2d Cir. 1973)). The Court next ruled that Brooks' "blanket assertion of Fifth Amendment privilege, as asserted to every response in [the] information subpoenas, [was] improper." *Id*. at 35. For each question, the Court observed that it would need to determine whether Brooks was confronting real as opposed to "merely trifling or imaginary hazards of incrimination." *Id*. at 38 (quoting *Marchetti v. U.S.*, 390 U.S. 39, 54, 88 S. Ct. 697 (1968)). The Court directed Brooks to answer Questions 7, 8, 9, and 12 (as modified), but directed Brooks to submit further information to support his claim of privilege with respect to Questions 1, 2, 3, 4, 5, 6, 10, and 11. Specifically, the Court directed Brooks to submit, *in camera*:

---

[1] The Court's complete rulings are set forth in the transcript of the March 20, 2012 hearing. *See* DE 50 ("Tr.").

> further information and/or argument as to how, number one, conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the defendant with some crime; and two, that this suggested course and scheme of linkage does not seem incredible in the circumstances of this particular case.

*Id.* at 39.

After the hearing, in compliance with other directives given by the Court, Brooks submitted additional responses to the information subpoena. *See* DE 51-1. In these responses, Brooks answered Questions 1, 4, 5, 10, and 11, but continued to object to Questions 2, 3, and 6 on the grounds that the information sought was covered by his Fifth Amendment Privilege. Accordingly, the *in camera* submission Brooks provided to the Court addressed only Questions 2, 3, and 6. Those questions sought the following information:

> 2. Identify the name, address, and account number of all bank accounts and brokerage accounts in the name of another person or entity, wherever located the contents of which have been used in whole or in part to make payments on your behalf, of any nature whatsoever, in excess of one-thousand dollars ($1,000.00) in or after March 2010.
>
> 3. Identify the name, address, and account number of all bank accounts an [sic] brokerage accounts in the name of another person or entity, wherever located, the disposition of which you may direct, in whole or in part.
>
> 6. Identify all payments, in addition to their amounts and the source thereof, made by you or on your behalf, of any nature whatsoever, in excess of one-thousand dollars ($1,000.00) in or after March 2010.

*See* DE 51-1 at 1-3.

B.  **Discussion**

Plaintiff's motion to compel seeks (1) rulings on Brooks's invocation of the Fifth Amendment privilege with respect to Questions 2, 3, and 6 and (2) a direction that Brooks provide certain information omitted in Question 9.  DE 51.  The Court will address both of these issues.

1.  *Questions 2, 3, and 6*

The privilege against self-incrimination embodied in the Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The right not to answer potentially incriminating questions is not absolute.  A witness may invoke the Fifth Amendment to decline to answer a question only "when the individual has reasonable cause to apprehend that answering the question will provide the government with evidence to fuel a criminal prosecution."  *Cartier v. Micha, Inc.*, No. 06-CV-4699, 2008 WL 2061386, at *2 (quoting *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 262 F. Supp. 2d 302, 306 (S.D.N.Y. 2003)); *see also Hoffman v. United States*, 341 U.S. 478, 486, 71 S. Ct. 814 (1951) (holding that the privilege extends to answers that "would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime").  The witness may not refuse to answer "merely because he declares that in so doing, he would incriminate himself -- his say-so does not of itself establish the hazard of incrimination."  *Hoffman*, 341 U.S. at 486; *see Krape v. PDK Labs, Inc.*, No. 02-CV-3440, 2004 WL 831137, at *3 (E.D.N.Y. April 19, 2004).  Rather, the person invoking the privilege has the burden of demonstrating a "reasonable possibility that his own testimony will incriminate him, [but need] not establish it by a preponderance of the evidence."  *Estate of Fisher v. Comm'r of Internal Revenue,* 905 F.2d 645,

650 (2d Cir. 1990); *see SEC v. Ryan*, 747 F. Supp. 2d 355, 363 (N.D.N.Y. 2010); *Krape*, 2004 WL 831137, at *3. "The danger of self-incrimination must be real, not remote or speculative." *Estate of Fisher*, 905 F.2d at 649; *see Ryan*, 747 F. Supp. 2d at 363; *Camelot Group, Ltd. v. W.A. Kreuger Co.,* 486 F. Supp. 1221, 1225 (S.D.N.Y.1980) .

"'[O]nce the court determines that the answers requested would tend to incriminate the witness, it should not attempt to speculate whether the witness will in fact be prosecuted.'" *Krape*, 2004 WL 831137, at *4 (quoting *United States v. Edgerton*, 743 F.2d 913, 921 (2d Cir. 1984)). In conducting the necessary inquiry, "[a] judge must determine, 'from the implications of the question, in the setting in which it is asked,' whether 'a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'" *OSRecovery, Inc.*, 262 F. Supp. 2d at 305 (quoting *Hoffman*, 341 U.S. at 486-87). The assessment of whether an injurious disclosure likely will result "must be governed as much by . . . [the judge's] personal perception of the peculiarities of the case as by the facts actually in evidence." *Hoffman*, 341 U.S. at 487; *United States v. Barile*, Civ. No. 06-MC-137, 2007 WL 3534261, at *2 (N.D.N.Y. Nov. 13, 2007) ("[T]he judge's perception of the facts come into play as [s]he assesses the credible basis of the party's invocation of the right . . . ."). If the incriminatory nature of the question posed is not readily apparent, the Second Circuit has held that "the witness then must endeavor to explain how his answer will be incriminatory." *Edgerton,* 734 F.2d at 919; *Krape*, 2004 WL 831137, at *4. With these principles in mind, the Court now turns to its analysis of Brooks' claim of privilege.

Prior to the Court's hearing, Brooks submitted a letter stating that he risked self-incrimination in the sentencing phase of his trial since criminal forfeiture and victim restitution

5

were at issue and "[a]n element in controversy attendant to both is ownership of particular restrained assets." DE 44 at 2. The *ex parte* submission does not provide much detail beyond this broad statement. Nevertheless, the Court will maintain the *ex parte* nature of the submission and not reveal its contents other than to state that Brooks now only claims to be risking self-incrimination with respect to criminal forfeiture, not victim restitution.[2]

Pursuant to Federal Rule of Criminal Procedure 32.2(b)(1)(A), prior to ordering criminal forfeiture, "the court must determine whether the government has established the requisite nexus between the property and the offense." Thus, Brooks' concern about revealing his connection to additional potentially forfeitable assets is not reasonable. On July 17, 2012, however, after Brooks submitted his *ex parte* letter, Judge Seybert issued a Preliminary Order of Forfeiture in the criminal case which mandated that certain assets traceable to Brooks' unlawful conduct should be forfeited in order to satisfy Brooks' "Forfeiture Money Judgment." *See* Cr. Dkt. DE 1570. The Forfeiture Order set forth the manner for liquidating the assets and provides a mechanism for third parties asserting an interest in the assets to have their interests adjudicated. *See id*. At first blush, it would seem that the issuance of the Preliminary Order of Forfeiture moots Brooks' concerns since Judge Seybert decided which assets are subject to forfeiture. However, the Order is not final until Brooks is sentenced. *Id*. ¶ 18 (citing Fed. R. Crim. P. 32.2(b)(4)(A)). Moreover, the Preliminary Order of Forfeiture remains subject to amendment to include property that "was located and identified after that order was entered." Fed. R. Crim. P.

---

[2] In addition to the criminal forfeiture proceedings, the United States has also instituted an *in rem* civil forfeiture case in this district against Brooks' assets. That proceeding is stayed pending Brooks' sentencing. *See U.S. v. All Assets Listed on Schedule I*, No. 10-CV-4750, DE 61. Brooks does not argue that he risks self-incrimination with respect to that proceeding.

32.2(e)(1)(A). Thus, the property subject to forfeiture remains an open issue in this case. The Court further notes that both the civil forfeiture and victim restitution issues are still pending.

Having concluded that the scope of the forfeiture is still an issue in this case, the Court next turns to the issue whether Brooks' answers to Questions 2, 3, and 6 would potentially incriminate him. As noted, Brooks' *ex parte* submission was not particularly illuminating in this regard.[3] Likewise, since the questions do not appear to seek information about Brooks' personal property, the potential for incrimination is not obvious. However, pursuant to the criminal forfeiture statute, the government's right to forfeitable property vests "upon the commission of the act giving rise to forfeiture" and any such "property that is subsequently transferred to a person other than the defendant" may be subject to forfeiture. *See* 21 U.S.C. § 853(c). Moreover, courts have ruled that property held by so-called "straw owners" who nominally hold title to property in order to protect the true owner from forfeiture proceedings is subject to forfeiture. *See U.S. v. Duong*, No. 03-CR-10, 2011 WL 2413521, at *8 (D. Conn. June 10, 2011); *U.S. v. Ida*, 14 F. Supp. 2d 454, 460-61 (S.D.N.Y 1998); *U.S. v. Rogers*, No. 94-CR-138, 1996 WL 252659, at *5 (N.D.N.Y. May 8, 1996) ("Courts look beyond the formal title to determine whether the record title owner is a 'strawman,' set up to conceal the financial affairs or illegal dealings of someone else."). Thus, Brooks risks self-incrimination by answering the questions posed notwithstanding the fact that the questions do not directly ask about his personal property.

---

[3] Given the circumstances, this lack of detail is somewhat understandable. *See In re Yates*, No. 04-BK-5619, 2008 WL 7889836, at *8 (Bankr. S.D.Cal. June 17, 2008) ("Under the facts of this case, the risks . . . of proving a detailed explanation as to why [the debtor] cannot answer [the interrogatories] are clear.")

Moreover, the Preliminary Order of Forfeiture is subject to amendment to include "substitute property that qualifies for forfeiture under an applicable statute." Fed. R. Crim. P. 33.2(e)(1)(B). Pursuant to 21 U.S.C. § 853(p)(1)(B), the Court may authorize forfeiture of "substitute property" where property subject to forfeiture has been "transferred or sold to, or deposited with, a third party." *See U.S. v. Surgent*, No. 04-CR-364, 2009 WL 2525137, at *16-17 (E.D.N.Y. Aug. 17, 2009). The answers to Questions 2, 3, and 6, may also then bear on the applicability of 21 U.S.C. § 853(p)(1)(B) and the government's ability to seek substitute property in the criminal forfeiture proceeding. The Court has no crystal ball to pre-determine what may happen at sentencing in this complex case.

Since Brooks' relationship to certain third-party assets remains an issue in the criminal forfeiture proceeding, the Court concludes that compelling Brooks to answer Questions 2, 3, and 6 at this time would violate his Fifth Amendment privilege against self-incrimination. In analogous situations, courts have upheld the privilege with respect to the tracing of assets. For example, in *AAOT Foreign Economic Association v. International Development Trade Services, Inc.*, 09-CV-9056, 1999 WL 970402, at *6 (S.D.N.Y. Oct. 25, 1999), the court upheld certain non-parties' post-judgment discovery objections based on the Fifth Amendment privilege because the individuals had reasonable cause to believe that answering the questions would furnish a link in the chain of evidence needed to prosecute them for criminal activity. *Id*. (citing *Estate of Fischer*, 905 F.2d at 648). There, the court found that one individual's sworn declaration reflecting that the judgment-debtor owned minimal assets "plainly rais[ed] issues of the existence, control, location, and disposition" of its assets and "possible corruption," since the judgment-debtor had previously entered into contracts worth millions of dollars. *Id*. at *4. Thus,

8

the court found that the individuals had "reasonable cause to apprehend that their answers to the deposition questions may enhance the possibility of their criminal prosecution." *Id.* at *6; *see also In re Yates*, 2008 WL 7889836, at *6-8 (holding that debtor's testimony regarding past ownership of offshore accounts would be potentially incriminating); *SEC v. Mutual Benefits Corp.*, No. 04-CV-60573, 2008 WL 239167, at *4 (S.D. Fla. Jan. 28, 2008) (refusing to sanction debtor for invoking his Fifth Amendment privilege with respect to whereabouts of certain assets); *In re Adelphia Commcn's Corp.*, No. 02-CV-41729, 2005 WL 2186582, at *9 (S.D.N.Y. Sept. 27, 2004) (upholding debtors' rights to assert their Fifth Amendment privilege and not respond to discovery seeking information about the nature and location of their assets). Similarly, this Court finds that the danger of incrimination faced by Brooks is "real, not remote or speculative" and, therefore, the privilege should be upheld. *See Estate of Fisher,* 905 F.2d at 650; *Krape*, 2004 WL 831137, at *4.

For the foregoing reasons, Plaintiff's motion to compel is DENIED, without prejudice, with respect to Questions 2, 3, and 6 and Brooks need not answer those questions at this time. There may come a point in time, after the criminal forfeiture proceeding is complete, when the risk of self-incrimination has dissipated. Plaintiff is free to renew his motion at that time.[4] The Court notes that while it is sympathetic to Mr. Levitt's desire to enforce his judgment, the "fact

---

[4] The Court notes that a final order of forfeiture may not be entered until ancillary proceedings addressing the third party claims to assets included in the preliminary order of forfeiture are resolved. *See* Fed. R. Crim. P. 32.2(c). In this case, several third parties have claimed an interest in certain assets subject to the Preliminary Forfeiture Order. *See* Cr. Dkt. DE 1583, 1585, 1586. Judge Seybert has stayed the ancillary proceedings so that the parties may engage in settlement negotiations. *See* Cr. Dkt. Electronic Order dated December 17, 2012. A settlement conference is scheduled for May 15, 2013. *See* Cr. Dkt. Electronic Order dated March 6, 2013.

that [Brooks's] assertion of [his] Fifth Amendment privilege will complicate the plaintiff's ability to enforce the [judgment] at issue here does not alter the outcome." *AAOT Foreign Economic Ass'n.*, 1999 WL 970402, at *6 (noting that "[i]t is the danger of self-incrimination, rather than the nature of the proceeding or the character of the litigant, which is decisive in determining whether the Fifth Amendment has been properly invoked").

### 2. Question 9

Question 9 seeks the following information:

> With respect to legal fees paid in or after March 2012, identify (a) the attorney to whom the fees were paid, (b) the source of the payment, including the account location, account holder and account number, if any, (c) the date of the payment, and (d) the amount of the payment.

*See* DE 51-1 at 4. Brooks responded as follows:

> See schedules annexed collectively as Exhibit A for the period March 1, 2010-December 31, 2010. All payments reflected on the schedules were made out of the escrow account of Blank Rome. The information is not yet available for 2011-2012 pending compilation and allocation by Defendant's accountants.

*See id.* Plaintiff seeks to compel an answer to this question for 2011-2012. Brooks did not respond to the motion to compel seeking this information. Since Brooks did not respond, the Court is left to assume that the information is now available. Therefore, the motion to compel is GRANTED with respect to Question No. 9. Brooks is directed to supplement his answer to that question and produce the material no later than April 23, 2013.

**SO ORDERED.**

Dated: Central Islip, New York
March 29, 2013

/s/ A. Kathleen Tomlinson  
A. KATHLEEN TOMLINSON  
U.S. Magistrate Judge